## SOUTHWORTH *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 652.   Argued and submitted March 3, 1896. — Decided March 23, 1896.

In an action brought by a Circuit Court commissioner for the District of Louisiana to recover fees for alleged services rendered the United States in prosecutions under Rev. Stat. § 1986, the Court of Claims found that the prosecutions were the result of a purpose on the part of party managers to purge, as they alleged, the register of illegal voters ; that the commissioner made no inquiry or examination of witnesses to satisfy himself of probable cause, but simply issued warrants on the affidavits filed ; that the warrants issued were not signed by himself but by a number of clerks who used a stamp, which was a fac-simile of his signature, until the stamp was broken, and then simply wrote his name ; that in the issuance of warrants the commissioner exercised no discretion, and made no personal examination of the complaints or witnesses, but issued a warrant in all cases in which a complaint was made ; that the warrants were issued generally for the purpose of affecting the register of votes to be used in the election, and not to arrest and punish offenders ; that in a large majority of the 1303 cases in which the defendants were discharged it did not appear that the commissioner performed any service in investigating the offences charged, nor in judicially determining the guilt or innocence of the parties. *Held,* that these findings justified the further finding of that court that "from said facts the court finds the ultimate fact to be that the claimaint's testator did not perform the services for the United States in good faith for the purpose of enforcing the criminal law," and the judgment entered thereon in favor of the United States.

THE case is stated in the opinion.

*Mr. Lewis Abraham* and *Mr. George A. King* for appellant.

*Mr. Assistant Attorney General Dodge* and *Mr. Charles W. Russell,* for appellees, submitted on their brief.

MR. JUSTICE BREWER delivered the opinion of the court.

On December 16, 1878, the testator of plaintiff filed his petition in the Court of Claims, praying judgment against the United States for the sum of $82,830, for services as United

States commissioner for the District of Louisiana. The petition alleged that proceedings were commenced before him as such commissioner in 8283 cases, and that under § 1986, Rev. Stat., he was entitled to ten dollars for each case. A demurrer thereto having been sustained, and a judgment of dismissal rendered, his executrix, the present appellant — he having died pending the suit — appealed to this court, and here the judgment of the Court of Claims was reversed, and the case remanded for further proceedings. 151 U. S. 179.

In the opinion then filed this court, while disapproving of the contention that the mere multitude of cases was proof of a lack of good faith, at the same time distinctly recognized that no cause of action arose against the government unless the proceedings, judicial in form, were instituted and carried on in good faith and with a view to the arrest and punishment of offenders; and the case was remanded in order that that question of fact might be considered and determined. Thereafter a trial was had in the Court of Claims, and upon the testimony presented that court found, in its sixth finding, as follows : " From said facts the court finds the ultimate fact to be that the claimant's testator did not perform the services for the United States in good faith for the purpose of enforcing the criminal law." And upon this finding judgment was entered in favor of the defendant. From which judgment the plaintiff has again appealed to this court.

If nothing else were before us than the conclusion of the Court of Claims, expressed in the sixth finding, there would be little for consideration; because, as was held when the case was here before, a lack of good faith on the part of a commissioner may rightfully be pleaded in bar of any claim against the United States for compensation.

But the contention is that this sixth finding is dependent on facts stated in the prior findings, and that they do not warrant the conclusion. Those findings show that " the prosecutions were the result of a purpose on the part of party managers to purge, as they alleged, the register of illegal voters;" that the commissioner made no " inquiry or examination of witnesses to satisfy himself of probable cause," but

simply "issued warrants on the affidavits" filed, and that the warrants were not signed by himself but by a number of clerks who used, until broken, a stamp, which made a fac-simile of his signature, and thereafter simply wrote his name; that of the 8283 persons against whom warrants were issued, about 2000 were persons of respectability and character, residents of the city of New Orleans, and these facts being disclosed the prosecutions were summarily dismissed. It appears further that "in the issuance of warrants the commissioner exercised no discretion, and made no personal examination of the complaints or witnesses, but issued a warrant in all cases in which a complaint was made;" "that the warrants were issued generally for the purpose of affecting the register of votes to be used in the election, and not to arrest and punish offenders;" that in a large majority of the 1303 cases in which the defendants were discharged it does not appear that the commissioner "performed any service in investigating the offences charged, nor in judicially determining the guilt or innocence of the parties." Further findings show that there were 120 persons swearing to the affidavits, each affidavit being sworn to by two persons, there being sixty groups of two persons, and that these affidavits were filed against persons who had registered for the purpose of voting at elections prior to that of 1876, and who, in the meantime, had removed from the ward or voting precinct in which they had theretofore been registered, but had not caused their names to be changed by the supervisors of registration.

Do these facts justify the conclusion stated in the sixth finding? What is a judicial proceeding, and what function does a commissioner perform in instituting a criminal prosecution? Is it partisan in any sense of the term? May a judicial officer exercise the powers conferred upon him to aid any party or faction in respect to a coming election? It seems that the mere statement of the inquiry carries an answer in condemnation. The very thought of a judicial office is that its functions are not partisan or political, and that he who occupies such office stands indifferent to all questions of mere party success.

It carries, also, the further thought that in the discharge of his judicial functions the magistrate exercises a personal and judicial consideration of every charge made, and subjects no one to the annoyance and disgrace of arrest until after personal and careful investigation he, as a magistrate, believes him to be guilty of a violation of law. The idea of a perfunctory discharge of these duties, of a transfer of responsibility to mere clerks, of a wholesale proceeding against a multitude of citizens without personal inquiry as to the probability of the charge against each, is something abhorrent to the true and reasonable understanding of the conditions of judicial action. The testimony is not preserved, and we must rest upon the findings of fact made by the Court of Claims, and upon them, irrespective of what may be considered in the sixth finding as partially a conclusion of law, it is evident that the action of the commissioner was in no just sense the action of a judicial officer, instituted for the sake of upholding the laws of the United States and the punishment of crime. The facts, as stated in the prior findings, we unhesitatingly affirm, justify the conclusions stated in the sixth finding, and we therefore hold that the services rendered by the commissioner were partisan rather than judicial, and as such entitled to no compensation from the government.

The judgment is

*Affirmed.*

Mr. Justice White took no part in the consideration and decision of this case.